UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
STACY ROGER-GORDON,

Plaintiff,

         -against-

BRAMSON ORT COLLEGE; LYNN
LEEB, CHAIR OF BRAMSON ORT
COLLEGE;     U.S.     ORT
OPERATIONS, INC.; ROSILAND
VERMUT, CHAIR OF U.S. ORT
OPERATIONS,    INC.;    ORT
AMERICA, INC.; DR. DAVID
KANANI; DR. ROBERT M.
ADELBERG; and JOHN DOES
NUMBER ONE through TEN,
fictitious names, real names
unknown, individuals or entities
infringing Plaintiff's rights as set forth
herein;

Defendants.

-----------------------------------------------------X

**Docket No:**

**CIVIL COMPLAINT
and DEMAND FOR
JURY TRIAL**

     STACY ROGER-GORDON (hereinafter "Plaintiff"), by and

through her undersigned counsel, William P. Perniciaro (hereinafter

"Mr. Perniciaro" or "Perniciaro"), hereby files this Complaint against

the above referenced Defendants.  Plaintiff alleges as follows:

## I.    NATURE of ACTION.

1.     The Plaintiff alleges that on May 20, 2014, the Defendants (a college and certain of its administrators) terminated her employment in retaliation for her expressed objections and disclosures concerning alleged theft of college resources by a co-worker at the college.

2.     Plaintiff further alleges her termination closely followed her presentation of objections about this same co-worker's derogatory, invidious, and dehumanizing comments (verbal abuse) directed to a woman working at the college.

3.     Plaintiff brings this action, in her own behalf, under the authority of the False Claims Act (the "FCA"), 31 U.S.C. §§3729 - 3733, also called the "Lincoln Law."

4.     This law prohibits false claims made to the government, and institutions receiving government aid, such as colleges.

5.     The FCA has an Anti-Retaliation provision (31 U.S.C. §3730(h)(1)(Relief from Retaliatory Actions) which states:

> (1)  In general.  Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or

associated others in furtherance of an action under this section or **other efforts to stop 1 or more violations of this subchapter**. (emphasis added).

6.      Plaintiff also presents a claim under New York State law since the woman (subjected to verbal abuse by Plaintiff's co-worker) was employed, and a student, at the college.

7.      This state claim is brought under the New York State Executive Law (the "Human Rights Law') §296(1)(Unlawful Discriminatory Practices) which provides, in pertinent part:

> "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

8.      The Anti-Retaliation provision of that law states:

> "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article…."  Executive Law §296(7).

9.      Last,  Plaintiff presents a local retaliation claim under the Anti-Retaliation provisions of the New York City Human Rights Law

(Administrative Code 8-107(7))(Unlawful Discriminatory Practices) which is nearly identical to the New York State Human Rights Law (Executive Law §296).

10. This action seeks re-instatement, various forms of damages, pre-judgment interest, attorney's fees, costs, and other relief.

## II.   JURISDICTION.

### a.   Subject Matter Jurisdiction.

11. The court has original Subject Matter Jurisdiction of this action pursuant to 28 U.S.C. §1331 which states:

> "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

12. This case arises under the laws of the United States in that it is filed to obtain the remedy set forth in Anti-Retaliation provision of the FCA.  31 U.S.C. §3730(h)(1).

13. With respect to the state and local (New York State and City Human Rights Law) claims, 28 U.S.C. §1367 (Supplemental Jurisdiction), allows this court to hear these claims since they "form part of the same case or controversy" as the federal claims set forth above (the FCA claim).

### b.   Personal (*in personam*) Jurisdiction.

14. The court has *in personam* jurisdiction over all the Defendants since all are domiciled in the State of New York, and/or had continuous and systematic contacts with the State by virtue of their situs, employment and/or alleged wrongful actions in the State.

### III.   VENUE.

15. Venue is predicated on 31 U.S.C. §3732 (False Claims Jurisdiction), in that one of the Defendants can be found, resides, transacts business, or committed an act proscribed by section 31 U.S.C. §3729, in the Eastern District of New York.

### IV.   THE PARTIES.

### a.   The Plaintiff

16. At all times relevant herein, the Plaintiff is an individual residing in New York County (Borough of Manhattan), New York State.

### b.   The Defendants.

17. Defendant BRAMSON ORT COLLEGE (hereinafter "Bramson"), a not-for-profit educational institution, governed by a Board of Trustees, with its principal place of business located at 69-30 Austin St, Forest Hills (Queens County), NY 11375.

18. Defendant U.S. ORT OPERATIONS, INC. (hereinafter "U.S. Ort Operations") is a domestic Not-For-Profit Corporation organized and existing under New York State law since December 6, 2006.

19. U.S. Ort Operations maintains its principal place of business at 75 Maiden Lane, 10th Floor, New York, NY 10038.

20. U.S. Ort Operations is the parent organization for Bramson.

21. Defendant ORT AMERICA, INC. (hereinafter "Ort America"), is a domestic Not-For-Profit Corporation organized and existing under New York State law since October 20, 1969.

22. Ort America maintains its principal place of business at 75 Maiden Lane, 10th Floor, New York, NY 10038.

23. Bramson, U.S. Ort Operations, and Ort America, at all times relevant herein, held themselves out to the public to be non-sectarian and exempt from taxation pursuant to the provisions of Article four of the New York Real Property Tax law.

24. Bramson, U.S. Ort Operations, and Ort America, at all times relevant herein, are places of public accommodation.

25. Bramson, U.S. Ort Operations, and Ort America, at all times relevant herein, employed the Plaintiff and the individual

Defendants, set forth below, as employees, agents, and/or servants.

26.   All acts of the individual Defendants were performed while acting within the scope of employment.

27.   Defendant LYNN LEEB, CHAIR OF BRAMSON ORT COLLEGE (hereinafter "Ms. Leeb" or "Leeb") is the most senior managing officer of Bramson.

28.   Ms. Leeb is an individual residing in Suffolk County, New York.

29.   Defendant, ROSILAND VERMUT, CHAIR OF U.S. ORT OPERATIONS, INC. ("Ms. Vermut" or "Vermut"), is the most senior managing officer at U.S. Ort Operations.

30.   Ms. Vermut is an individual residing in Nassau County, New York.

31.   Defendant DR. DAVID KANANI (hereinafter "Dr. Kanani" or "Kanani') is the President of Bramson.

32.   Dr. Kanani is an individual residing in Queens County, New York.

33.   Defendant DR. ROBERT M. ADELBERG (hereinafter "Dr. Adelberg" or "Adelberg") is the Dean of Bramson.

34. Dr. Adelberg is an individual residing in Bronx County, New York.

35. Defendants JOHN DOES NUMBER ONE through TEN, are individuals or entities, whose real names are unknown, and believed to have infringed Plaintiff's rights as set forth herein

36. If discovery in this case discloses the true names of JOHN DOE defendants, an appropriate motion will be made, or a stipulation entered, to amend the caption and Complaint, to reflect the identity and conduct of these currently unknown individuals.

## V.    FACTUAL BACKGROUND.

37. In 2013 and 2014, Plaintiff was the Director of Human Resources ("HR") for Bramson.

38. Plaintiff had concerns about the work behaviors of a Bramson worker  (to be identified as "S.A."), an individual working directly for Defendant Dr. Adelberg.

39. S.A. was an hourly employee performing services for Adelberg which assisted in performing the educational mission of Bramson.

40. Plaintiff found irregularities in S.A.'s time-sheet consisting of inflated hours for work performed for Bramson, that S.A. was

taking excessively long lunch hours, and spending non-working hours in administrative (including the medical department assistants' and financial aid offices) at Bramson, interrupting others while they tried to work.

41.   On multiple occasions Ms. Roger-Gordon explained her concerns about S.A. to the then Executive Director, Dr. Ephraim Buhks ("Dr. Buhks" or "Buhks"), Dr. Adelberg, Vermut, and Leeb.

42.   Dr. Buhks and Vermut told Plaintiff to "let it go," and that he (Buhks) would deal with it.

43.   However, Dr. Buhks did nothing to rectify the problem and left Bramson in December of 2013.

44.   In 2014, Plaintiff directly approached the new Interim Director, Dr. Adelberg, as well as the President (Leeb) of the Bramson Board of Trustees about the problem.

45.   This included clear written disclosure that S.A. listed hours on her time sheet that she did not actually perform.

46.   S.A. also spent time on extended lunch hours and frequented other workers' offices when she was supposed to be performing her job.

47.  In April 2014, S.A. also referred to a co-worker and Bramson student as a "carpet-muncher," a recognized slur designed to reference sexual practices, de-humanize homosexual women, and insult heterosexual women.

48.  Specifically "carpet muncher" is generally understood as a derogatory reference to a homosexual female.

49.  The terms are used by persons seeking to either insult such individuals, to vilify them, and/or label their sexual preference or practice unacceptable or abnormal.

50.  The words refer pejoratively to oral sex performed by one woman upon another.

51.  It is further used to stigmatize heterosexual women who do not fit current societal norms of dress, lifestyle or manner for females.

52.  Women of reasonable sensibility, regardless of sexual preference, find these terms highly offensive.

53.  Such language creates a danger of the creation of a hostile work environment.

54.  This incident was documented to management by Plaintiff in writing.

55. Plaintiff objected to S.A.'s misconduct to upper management at Bramson, including Kanani, Adelberg, Leeb, and the Board of Trustees.

56. Adelberg promised to meet with S.A. to discuss her misconduct.

57. On information and belief, although Adelberg did meet with S.A., he did so with another employee in the room (a medical assistant) which is completely unethical and inappropriate.

58. Second, this was not a meeting specifically pre-arranged for purposes of instruction or discipline.

59. Instead Adelberg simply walked in to address S.A. unannounced.

60. Plaintiff was instructed not to attend.

61. The traditional format is to request a meeting with the employee and to give the employee the opportunity to bring an advocate.

62. In this case, as S.A. had again presented fraudulent hours, she should have met with her supervisor, and the Director of Human Resources (the Plaintiff).

63. S.A. would also have an opportunity to have a supporter or advocate in the meeting.

64. However, Adelberg did not arrange for such a meeting, or allow Ms. Roger-Gordon to be a part of it.

65. Adelberg simply conducted a haphazard friendly discussion where it is believed he failed to address the issues in a serious manner.

66. Further, Adelberg presented neither a Letter of Concern to S.A. nor sought to have her sign an acknowledgement of her false time sheets and other misconduct.

67. Clearly this was not a professional and ethical means of addressing a theft from Bramson, the other deficient work behaviors and improper comments.

68. Moreover, neither the Interim Director (Adelberg), nor the Board President, pressed to terminate S.A., as Plaintiff had suggested.

69. In fact nothing at all was done; not so much as a warning was issued.

70. Instead, S.A., in retaliation, forwarded an email to the college's Title IX (Anti-Discrimination) Unit claiming that Plaintiff had "harassed" her.

71.   Thus S.A. felt licensed, if not enabled, to abuse this internal Title IX process as a cover for her own misconduct, and to punish Plaintiff.

72.   This was due to the lackadaisical response and lack of resolute action by Bramson in response to misconduct.

73.   This left S.A. feeling she can misuse the school's internal procedures to stop Plaintiff from performing her employment responsibilities, if not her legal ones, under federal and state law.

74.   Given Bramson's heavy dependence on United States Department of Education (the "DOE") sponsored Federal Financial Aid ("Financial Aid"), the college had a lawful duty to take care in properly expending its resources.

75.   In furtherance of this, anyone knowing of fraud, waste, or abuse of these DOE funds has a lawful duty to report it immediately.

76.   This includes Plaintiff and all the individuals she notified concerning S.A.'s misconduct.

77.   Moreover, Plaintiff was aware of pending New York State Department of Education ("NYDOE") and Federal Department of Education ("DOE") audits of alleged misuse and/or

misapplication of government provided Financial Aid at Bramson.

78. The Defendants were aware of the audits and concerned about any further disclosure of mismanagement of assets at Bramson.

79. Further Plaintiff, as Director of Human Resources, had professional and ethical obligations to report S.A.'s abusive comments ("carpet muncher") directed to a female worker at Bramson.

80. Similarly Brasmon's upper management had legal obligations to safeguard the female worker/student from such abuse by S.A. and put a stop to it immediately.

81. In the ensuing investigation (of S.A.'s "harassment" claims), the Title IX investigator (Mr. Steve Harris), much like Buhks and Adelberg, failed to deal with the important facts.

82. Harris simply spoke with Bramson's Controller (Mark Mirenberg), a friend of S.A., and the head of Financial Aid at Bramson (Angie Marra), individuals having to do with neither the alleged "harassment" charge, nor the concerns regarding S.A.'s alleged theft of college resources and verbal abuse.

83.  Harris completely ignored the well spring of S.A.'s "harassment" charge, i.e.: S.A.'s intent to dissimulate her own wrongdoing and punish Plaintiff for pointing out S.A.'s misconduct.

84.  When the Final (Title IX Investigation) Report was issued as to S.A.'s "harassment" charge, S.A.'s claims were summarily dismissed, i.e.: there was no harassment whatsoever by Plaintiff recognizable under Title IX.

85.  The same report failed to make findings that the "harassment" charge was only leveled against Plaintiff after she uncovered and disclosed S.A.'s thefts and abuse of a female employee.

86.  Plaintiff wrote an email, dated May 5, 2014, to Harris, and Andrew P. Cooper (Bramson-ORT corporate counsel at Davidoff, Hutcher & Citron, LLP) expressing her ongoing legal concerns about S.A.'s misconduct and requesting guidance as to how to proceed with S.A.'s indisputable theft of the school's funds.

87.  The following is the text of the email:

From: Stacy Roger-Gordon
[mailto:sroger@ortopsusa.org]
Sent: Monday, May 05, 2014 2:39 PM
To: sharris@bramsonort.edu; Cooper, Andrew P.
Subject: Title IX claim

Dear Steve and Andrew,

Thank you for your thorough exposition of the subject in the context of our responsibilities under Title IX and the recognition of our collective professional, legal and ethical obligation to insure the institution's resources are correctly expended, in this case that workers are not misrepresenting their time sheets, and/or otherwise ignoring work tasks.

I am also mindful that there is no Title IX violation in Ms. [S.A.'s] claims of "harassment" as Title IX requires proof that management's actions were motivated, or directed to some protected status, such a gender, nationality, or race. You correctly point out this was not the case. Ms. [S.A.] also seems to misunderstand this, and I trust she will receive some counseling and instruction. Otherwise, whenever she is presented with management's rightful concerns, she will further trigger inquiries into Title IX, and not perform a reckoning with respect to, and clearly focused upon, her own conduct.

I look forward to the discussion and written promulgation of express guidelines as to such matters for our benefit and that of the school. Such will provide direct supervisors with clear authority to inform workers of wrongful conduct and prevent them from feeling, or claiming, they are being harassed. It will also delineate the responsibilities and role of higher management (i.e.: HR and the controller's office) when we see what clearly appears to be a worker who is **wasting the school's assets, whether this is categorized as Theft of Services, misappropriation, neglect of duty, and/or just plain misconduct.**

I am also pleased with the outcome and it's finding that there was no wrongful or unlawful conduct directed toward Ms. [S.A.]

In the interim, please accept the following input into how these matters can perhaps be handled in the future:

· Our Title IX grievance procedure is perhaps unclear about providing an "alleged wrongdoer" a copy of the original complaint. In our recent case, I (one of the "alleged wrongdoers") did not see the original report from the worker until the outcome of the investigation. I thus had no idea as to what was occurring, i.e.: what exactly was being investigated.

· I would also suggest we make certain to interview all relevant parties. In the instant matter I am seeing no documentation of the input of the Interim Director (the "ID"), a critical player under the circumstances, since abuses by employees, in terms of **inflating time actually worked, as well as neglect of duties, is a key component of the ID's responsibilities in our organization**.

· A clear discussion of relevant evidence should also include some of the more conclusive evidence which led to the ultimate findings. For instance, I submitted detailed **records clearly pointing to inflation of time records and misfeasance of duty**. I saw no mention of this. The presentation of this evidence for comment, directly to the complaining party, often very quickly exposes a spurious claim and allows management to get to the bottom of things in short order.

· A final report should also, in addition to making findings as to Title IX issues, have some focus on the complaining employee, especially when the claim turns out to be unfounded, that is not only without basis, but also instituted perhaps as a means of avoiding, or in this case delaying, the consequences of misconduct. Stated another way, Ms. [S.A.] clearly has very significant work issues which were held in abeyance for 4 weeks while we all answered generalized claims of "harassment." From an HR perspective, **now that the worker's harassment**

**claims have been refuted, I would like to know how to re-engage the process of dealing with clear mis-reporting of time, and instances of neglect of work responsibilities, i.e.: the very problem which triggered all of our professional attention?**

But I recognize that this process is unfolding, i.e.: that we are all working together to strengthen our mission and ultimately perform a great service to our school, its students and faculty.  I do not pretend to have all the answers here, but am certainly concerned that my obligations are constrained either, by lack of clarity in procedure, and/or workers who feel empowered to hinder management by simply filing a "harassment" complaint.

So please allow me to know how I can be of assistance going forward.

Stacy

Stacy Roger-Gordon
Director of Human Resources
US Ort Operations
69-30 Austin Street
Forest Hills, NY  11375
718-261-5800, ext. 1005
(emphasis added).

88. There was no response or refutation issued regarding Plaintiff's written assertions, and less than three (3) weeks after this clearly written and communicated expression of objections, disclosures, and professional recommendations, Plaintiff was abruptly terminated.

89. Plaintiff had also presented objections to the Defendants as to S.A.'s verbal abuse of the female employee at Bramson.

90. Plaintiff's employment termination on occurred on May 20, 2014.

91. Prior to this, Ms. Roger-Gordon had no difficulties at work, her performance was universally praised, and free from any complaint from superiors.

92. Plaintiff also received a bonus in February 2014.

93. Thus, the close temporal proximity to protected conduct (her express written objections and disclosures concerning misuse of college funds and objections to verbal abuse of a woman), and the lack of any basis for termination, triggers the application of federal and state law intended to safeguard government resources provided to colleges in the United States and protect women from discrimination.

## VII.   CAUSES OF ACTION.

### A CLAIM AGAINST ALL DEFNEDNANTS UNDER THE ANTI-RETALIATION PROVISIONS OF THE FALSE CLAIMS ACT.

94. Plaintiff herein incorporates, repeats and re-alleges all prior paragraphs.

95.   The FCA (31 U.S.C. §§ 3729 – 3733) was enacted to prevent misuse of government money including theft of such funds after they are provided to private institutions.

96.   Thus the law prohibits "False Claims" defined as follows:

> "any (false) request or demand, whether under a contract or otherwise for money or property and whether or not the United States has title to the money or property that is (1) presented directly to the United States, or (2) to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest" and the government provides or reimburses any portion of the requested funds."   See   31   U.S.C. §3729(b)(2)(A)(i) and (ii).

97.   This includes any "false" (i.e.: fraudulent) demand ("claim") for money, even if not made directly to the federal government, such as a claim made to a "recipient" of government money (a government subsidized entity), if the money is to be used to advance a government "program" or "interest," and the government only provides a "portion" of the requested funds to the entity.

98.   Bramson is such an entity since it receives a "portion" of its resources from the government in the form of federal Financial Aid and other government funds paid directly to the college.

99.   Moreover, Bramson's mission is higher education, the primary purpose (the "program" or "interest") of the government's funding in this matter.

100.  S.A., a worker at Bramson, in presenting false time sheets, was diverting Bramson's government provided educational resources.

101.  Plaintiff took steps to prevent S.A.'s theft of college resources in violation of the FCA, i.e.: "efforts to stop 1 or more violations of this subchapter (the FCA)."  See 31 U.S.C. §3730.

102.  Thus Bramson, and the other Defendants, terminated Plaintiff in retaliation for her attempts to rectify a serious problem, safeguard the school's resources, and thereby protect the government's investment in Bramson.

103.  As a result, Plaintiff has suffered financial harm and emotional distress compensable by the Anti-Retaliation provisions of the FCA.

104.  Plaintiff is entitled to the Judgments set forth below in the "WHEREFORE" section.

**A CLAIM AGAINST ALL DEFNEDNANTS UNDER THE NEW YORK STATE and CITY HUMAN RIGHTS LAW.**

105. Plaintiff herein incorporates, repeats and re-alleges all prior paragraphs.

106. S.A. made derogatory comments to a female co-worker and Bramson student consisting of a demeaning slur concerning sexual practice, i.e.: that the co-worker/student was a "carpet muncher."

107. This was intended to make the female co-worker/student feel unwelcome, objectionable, and not acceptable due to her perceived gender and/or sexual orientation.

108. This presents a clear and present danger of a violation of New York State Executive Law §296 and New York City Human Rights Law §8-107, including discrimination, and a hostile work and educational environment, based upon gender and sexual preference.

109. Plaintiff presented objections to the Defendants as to this misconduct.

110. The Defendants terminated her employment in retaliation shortly thereafter.

111. As a result, Plaintiff has suffered financial harm and emotional distress compensable by the Anti-Retaliation provisions of the

New York State (§296(7)) and City Human Rights Law (§8-107(7)).

112. Plaintiff is entitled to the Judgments set forth below in the "WHEREFORE" section.

**WHEREFORE**, the Plaintiff demands, the following Judgments in amounts to be determined upon trial of this case:

- Entry of Judgment against the Defendants under each Cause of Action set forth above;

- Reinstatement;

- Compensatory Damages in an amount sufficient to fully compensate the Plaintiff for her injuries, damages, and losses, including but not limited to back-pay, front-pay, emotional distress, re-employment expenses;

- Liquidated Damages as allowed by law, including, but not limited to, two (2X) times lost wages pursuant to 31 U.S.C. §3730(h)(2);

- Special Damages, including but not limited to, medical and mental health expenses;

- Exemplary (Punitive) Damages, as allowed by statute and precedent, in an amount which will adequately punish the defendants for their actions and omissions;

- Pursuant to Rule 8(a)(3) a total monetary damage award (Compensatory, Liquidated, Special, and Exemplary, etc.) of $10,000,000.00;

- Interest on Back Pay pursuant to 31 U.S.C. §3730(h)(2);

- Pre-Judgment Interest as allowed by statute, precedent and Court Rule;

- Attorney's Fees to be determined in a post-judgment proceeding pursuant to Rule 54(d)(2)(B);

- Litigation Costs;

- An Injunction prohibiting the defendants from causing further damage to the Plaintiff;

- Any Court Order needed for Plaintiff to be furnished with full relief; and

- Such other and further relief as this Court may deem just and proper.

## **TRIAL BY JURY**

Plaintiff hereby demands trial by jury on all issues pursuant to Federal Rule of Civil Procedure 38(b) which allows such a demand to be included in this Pleading.

Dated:      December 21, 2015

/s/ William P. Perniciaro

William P. Perniciaro
Attorney for Plaintiff
84 New Dorp Plaza, Suite 205
Staten Island, NY  10308
Phone:      718-667-5000
Cell:        732-991-0204
Facsimile:  718-667-0798
Email:      wperni@msn.com